All right. The final case on the argument calendar is United States versus Baptiste. And I see we have this waiting for the Mr. Baptiste. Morning. I think you're on mute. Sorry. Good morning. Morning. And we have Mr. Schaefer for the government. Good morning. All right. Miss Lee, you have two minutes for rebuttal. Go ahead. Great. Thank you. Good morning, Your Honors. Eunice Lee from the Federal Defenders for Mr. Baptiste. Here we have a situation where the district court, in imposing an above guidelines 60-month sentence on Mr. Baptiste, the court committed several procedural errors, including improperly relying on the mere fact of a dismissed arrest and also making untrue assumptions about Mr. Baptiste's the upward variance here combined to justify remand for resentencing. Now, with regard to the dismissed arrest from November 2018, there were no facts about this. There was no indication of wrongdoing whatsoever. Nonetheless, on that point, the district judge said three times at the beginning of the sentencing, I'm not considering the underlying conduct. The defense lawyer said, we don't want you to consider the underlying conduct. She said, I meant to tell you, I thought I was clear in the beginning. I'm not considering underlying conduct. And then the defendant, when he spoke, mentioned the prior arrest. And she again said, for the third time, I'm not considering that conduct. So I don't understand how we could find plain error in considering conduct. But the district court said three times she was not considering the underlying conduct. Well, that's not entirely accurate as to what the district judge said. What she said is, I'm not finding that you were dealing drugs. But she also said she is considering the arrest because the court said, I'm considering this arrest. And essentially, you should have learned a lesson after this interaction. Well, yes. So Leslie, isn't the lesson that she explicitly said should have been learned is in effect that even an innocent person can have a police encounter, which, if they turn out to have a gun on them, is going to get them in a lot of trouble. That may not be the greatest argument or the greatest point. But it's certainly a far cry from saying, you were doing something wrong. And I think you're a bad person, therefore. And the fact that you've been arrested means that I take that into account as detracting from your character in some way. Well, Your Honor, I guess the fact of saying that you should have, you're wrongfully arrested. You have done nothing wrong. And that's all that the evidence in this. Yeah. And so you should really be careful about carrying guns around because there are lots of racist cops out there who might just pick you up for no good reason and stop and frisk you. And if they find a gun and they make up some story about you, then you're going to be going to prison for a long time, if that's believed. That could happen, right? That could happen. And that would be incredibly unjust that someone who's wrongfully profiled and arrested should be viewed more harshly at sentencing than someone who's not wrongly arrested. I don't know if it's judged more harshly. It's that anyone walking the streets really ought to be aware of the possibility that if they're carrying a gun around and they're not allowed to have a gun, they could be in trouble. But once it's actually happened to you, that you've been stopped by the police, that should make you think twice about carrying or three times about carrying the gun. Again, I'm not saying that's a terrific argument about sentence or that it had any real impact on what the judge said, did. But it's a far cry from saying, I'm assuming that you did something, that there's no evidence that you did. Well, Your Honor, to the extent that the court isn't talking about issues of deterrence and recidivism, this idea, well, he should have learned from that, I think it's to say that someone who has not done something wrong with regard to this prior incident, that I'm going to hold that against you. I'm going to say, you didn't learn, you weren't deterred from this incident when you did nothing wrong. There's no indication that that was the reason for the sentence. When she pronounced the reasons for the sentencing in her written statement of reasons, there's no reference to, you should have known that. That was something that was exchanged back and forth, but she gave other reasons for why the above guideline sentence was appropriate. There's no indication that that was determinative or even an impact. There's certainly reason to think the fact that this was repeated, that when the judge first mentions an upward variance, she knows the fact that this is a prior arrest. And when discussing, again, prior to the end of the sentence, this issue of why the arrest is relevant, this notion that that interaction should have told you how you're supposed to act in society, this notion that you didn't learn your lesson from that. And so certainly the judge does not in pronouncing her sentence specifically say, I'm relying on this arrest, but it comes up repeatedly. And the court very much does talk about deterrence and recidivism. And the fact that this is on the record, combined with the reference to the incorrect reference to the idea that he was on parole revocation status. Can I ask about that, Ms. Lee? What does that mean? What does it even mean? He was in parole revocation status. What is that? It means that rather than just... Oh, I'm sorry. No. Rather than just you're released on parole and you're in good standing, once there's been some potential violation, so you're in the status of having your parole revoked. If your parole was revoked, you'd be back in jail. Well, you wouldn't be... It's not a question that your parole was revoked, but that you were already in the process of having... You were in the process that you've been essentially charged with a violation of parole, but you haven't necessarily had it revoked yet. So you're in that process. So in parole revocation status, in your view, means that she was saying, which would clearly was inaccurate if that's the way we read this, that someone had charged him with a parole violation. Correct. That is what being in parole revocation status means. I'm going to say when I read it, I thought that the term was sort of meaningless. And I took it as a kind of slip of the tongue for you're on parole and at risk of having your parole revoked if you, as happened now, got arrested for possessing a firearm. I think in context, it's actually the stronger reading, given that she's talking about this at the same time that she's mentioning the November 2018 arrest. It seems clear that the judge appears to be assuming that that November 2018 arrest didn't lead to some kind of parole revocation status or the start of the proceedings. And it goes back to this idea, this assumption that something was going on with this November 2018 arrest. If defense counsel read it that way, I would imagine defense counsel would then correct that mistake. Did that happen here? Defense counsel did not correct the judge with regard to this parole revocation, the misstatement about him being on parole revocation. But again, I think it adds to this idea that the judge really is looking at that November 2018 arrest as being something. Even if the court is not saying that he was dealing drugs, there is that implication that something is going on there, and you should know better because you were wrongfully arrested. So you're saying that parole revocation status, at least in the context of the business of the arrest, you read that as saying that the judge believed that his parole was in the process of being revoked over that arrest? Correct. I think, as I said, the comment comes right when the court is mentioning the fact of what happened in this case and the fact of the prior arrest. And I think that, as I said, that does combine to suggest that the court actually is considering that something happened, something for which Mr. Baptiste should be held accountable did happen at that November 2018 arrest. And that, combined with the fact here that you have the court imposing a sentence that's double of what probation suggested, well over what the government suggested, and making these procedural errors and not giving extensive justification or justification enough to explain why the court is going above guidelines. Essentially, the focus of the court's comment at sentencing and imposing this are geared towards the seriousness of the offense. But the comments made are things that are inherent in almost every 922G. The court talks about how guns are dangerous, he shouldn't have a gun on the street, this is a very serious offense. He talked specifically about the fact that he had been, forget about whether he was revoked or not, they had served a 20-by-4 sentence for very, very violent robbery and had a loaded gun on the street while he was on parole within a year or so of release. That was driving her decision, I think, based on what she said. And that's not a run-of-the-mill felon in possession case. There's a lot of felons in possession who don't have the long and violent history that your client has. So I think that's the distinction that's important. Well, it's certainly... My understanding of the judges... My understanding... Let me just add something to what Judge Bianco has said. My understanding of the judge's comment was that this defendant ought to have learned something from his whole prior history that involved these very serious convictions with long prison sentences for very serious crimes that Judge Bianco was referring to. Well, I mean, I guess two things. When the judge actually talks about Mr. Baptiste having learned a lesson, that was not in the context of talking about the priors. When the court explicitly mentioned he should have learned his lesson, it was in talking about the November 2018 arrest. She says he's had a long time in jail to think about his prior conduct, and it didn't change. That wasn't in connection with the arrest. That wasn't in connection with the fact that he was in jail for 25 years and could have thought about his prior violent life. She specifically said that. She considers that. I guess I just was clarifying with regard to when she talks... uses the language about learning a lesson, that that's in the context of the November 2018 arrest. But with regard to the fact of his prior record, absolutely his priors are relevant, but those priors were factored into the guideline range for Mr. Baptiste. And so certainly, yes, it matters and it can be considered, but it doesn't take the actual circumstances of the offense of his gun possession so far out of the norm. There are felonies that are three points under the guidelines that it depends on the circumstances. His involved tying people up, three people in an armed robbery in an apartment in Manhattan, tying people up, putting a gun to someone's head. So not... just because he's got a certain criminal history doesn't necessarily reflect the violent and the use of a gun previously. Yes, but Your Honor, Mr. Baptiste served 25 years for those crimes, and what this sentence is for is for the gun possession. And so, yes, obviously the prior record is relevant, but it's not, as I said, he served 25 years in prison for those offenses. Well, but is it more relevant, is it more relevant than just the fact, I mean, your argument is, and I think it's a reasonable argument, is that what the judge said was, this is a very serious crime and you're a pretty dangerous person. And your argument is that each of those things is already taken into account by the guidelines. That's exactly what the guidelines are trying to do, is to measure how bad a crime, and that's done by the way they calculate the sentence, the offense level, and how bad a guy, which is done by the other axis that calculates the criminal history. And so you're saying the judge didn't adequately explain why this particular person, because he's got a serious record and has committed a serious offense, is worse than the typical person for whom that guideline sentence applies. Is that a fair statement of the argument? That's correct, Your Honor. Okay, and that's what, and so I guess Judge Bianco's question is going to, but isn't it obvious that his prior record, and yes, he's paid for that crime, but his prior record is not just your average, he has one felony conviction that gets you three points. It's an extremely serious gun-related crime, and that's something that the court should be entitled to take into account or not, according to you? It could be appropriate to take that into account. The problem here is where we have a significant, when there's a major deviation from guidelines, there really is supposed to be a more specific explanation, and where we have this confusion of, or not confusion, but the fact that these improper factors are being considered, that makes it that much more appropriate for it to be reconsidered, because we have not an extensive explanation of what is justifying this upward variance, and we have the problem with the usually with arguments that there should have been a better explanation, is that these are almost always unpreserved, and they're unpreserved for good reason, because what defense lawyer says to a judge, judge, you know, I don't think you gave enough reasons for why you think my client is a really bad person who deserves a really long sentence, because you know what's going to happen, you're going to then get an explanation of exactly what's wrong with your client that saying that here, it's not about that, it's about we don't have an adequate basis to assess whether this was a reasonable sentence or not, because the judge wasn't clear enough about what what is so serious, and why it's worse than the typical case, or why it's twice as bad as a typical case. Is that the point? It's really both. It is the fact that we don't have enough from the court explaining this, and that it makes it in context with the procedural errors, it makes it that much more problematic. And with regard to what your honor raised about the preservation on the inadequacy of the explanation, I think for that reason, in cases, I think in the Lewis case cited in our brief, the court has recognized at times plain error when, particularly when there's an upward variance, a failure to give sufficient explanation for it. So that combined with the improper reliance is what's really problematic. And it is very similar as well to the GEOA case in our brief, where again, relying on the mere fact of an arrest, particularly in a case where the court is going above guidelines, the court does find that that can be a denial of due process and warrants for resentencing, so that it's clear what the court based the decision on. Now, isn't it correct that in this case, the serious offenses from long ago were not reflected in the criminal history because of how ancient they were more than 15 years before? This is a case in which the really serious aspects of the defendant's criminal history did not contribute criminal history points. Well, the most serious offense, the one for which he received that 25 years before in this, he had prior convictions committed prior before the age of, I believe, he was 19 and under at the time of the offenses that occurred before the 1993 offense, I believe, where he received this lengthy sentence. And certainly that is not all of his priors are reflected in the criminal history points, perhaps the older ones when he was younger, but this most serious offense is reflected in that. I misspoke as to which one, but his criminal history points would have been higher if they weren't chopped off by the retroactivity, by the limit on retroactivity for CH points. I mean, certainly, yes, he could have, his offenses, prior offenses could have under different circumstances resulted in a higher. There were three of them. There were three offenses that were not counted in his three felony offenses, which were not counted as criminal history points from the age of 16 and seven, six under the age of 19. That's, that's, that's correct. One was loaded. One was having a loaded fire and possession of a loaded firearm. The other was a robbery of a commercial establishment in the seriousness in terms of, you know, robbery guns to his 25 year conviction as well as the conduct here, right? Certainly serious offenses, but again, looking at what the justification was for why the judge imposed this above guideline sentence, there's not enough in the record to support that, particularly given the improper reliance on the November, 2018 arrest, the improper assumption about parole revocation status, and the more general just focus on the notion of the seriousness of gun crimes in general. And with all of that, we don't have enough in this record to support, to support the sentence, to support not sending this case back. All right. Thank you very much, Ms. Lee. And Mr. Schaffer, it's your turn. Afternoon, your honors. May it please the court. My name is Jared Schaffer. I represent the United States Department of Justice, and I represent the government below. Barely one year after serving 25 years for several violent armed robberies and burglaries, Mr. Baptiste was arrested for illegally possessing a loaded semi-automatic firearm. After an independent review of the facts and relevant sentencing factors, Judge Cote imposed an above guideline sentence that was greater than what probation or the government recommended. But in doing so, she did not err. As the record indicates, Judge Cote articulated both orally and in writing specific and permissible reasons for the sentence she imposed. And given the straightforward and conceptually simple arguments before the court in this case, even if her reasons were relatively brief, they were legally permissible and identified her primary concerns of recidivism and danger to the public. And Mr. Baptiste's sentence was not shockingly high, shockingly low, or otherwise unsupportable as a matter of law. The balance of Mr. Baptiste's claims boil down to his belief that Judge Cote simply did not say enough to justify his higher sentence. But this court has never required what Mr. Baptiste demands here, which is providing a lengthy or elaborate explanation of multiple aggravating or mitigating factors, or explaining in open court why any particular unselected sentence was not appropriate. Mr. Baptiste concedes that his claims are reviewable only for plain error because there was no error, let alone plain error here. The court should affirm the judgment. I want to touch on just a few things that were raised by my friend. The first is the suggestion that this is somehow an average crime or in the heartland. As the court pointed out, that's not exactly true and it's not readily apparent from this record. There were a number of serious events in Mr. Baptiste's past that contributed to his criminal history. As you pointed out, Judge LaValle, some of those were not included because of the 15-year bar. But I would also point out that that 15-year bar is shorter than the period that Mr. Baptiste had actually been in prison. So he had been in prison longer than that 15 years, which is why those other offenses were not counted. The judge said three times, as you pointed out, Judge Bianco, that she was not considering the conduct underlying the November 18th arrest. And her language was extremely clear. I encourage the court to look at pages 60, 64, and 66 to 67 in the record. But Judge Coate was explicit. I'm not finding he was engaged in drug dealing on that occasion, but I think it's undisputed he was arrested on that occasion. I'm not making a finding he was actually guilty. I have no idea what the underlying facts were and there was no conviction. I want to assure you, Mr. Baptiste, I'm not finding you were dealing drugs. That's not the issue. It's all about the gun. Judge Coate was extremely clear that she was not considering any underlying conduct because she did not know what it was. And she was not considering the November 18th arrest or November 2018 arrest for any improper purpose. This court has clearly held that judges may consider the fact of a prior arrest, whether it's dismissed or whether no conviction results, for the purpose of understanding the defendant's background. That's precisely what she did. As you pointed out, Judge Lynch, this court may not find that to be the most convincing or persuasive argument, but it was not impermissible. And this court gives great deference to the judge's considerations of those factors and those arguments. I would also point out that several times my friend indicated that the record suggests that Judge Coate considered these factors in connection with her consideration of appropriate factors. And the primary basis for that inference is a presumed closeness in time in their mentioning in this record. The entire transcript of the sentencing is approximately 14 pages. And several of these comments were separated by references to other matters in the record. The fact that some of these lines may occur on the same page do not indicate or support an inference that Judge Coate was improperly considering other factors at the time that she was considering appropriate factors. And Mr. Schaffer, at the end of the day, am I right that neither this, whatever it means, parole violation status comment, nor the arrest, actually features in either the written statements of reason or in anything that the judge said when she ultimately passed sentence? That's absolutely right, Your Honor. Judge Coate did never return to the parole revocation status question. I agree that the record is not clear that it's that what that she even meant by that comment. As we noted in our brief, it's also entirely possible she was talking about his later arrest on federal charges when he was in fact in what might be called parole revocation. Well, it's a little hard to read that because she's talking at the time about the past, the past tense, and it's while she's talking about the events of the crime, not about what has taken place since the arrest that led to these proceedings. Fair enough, Your Honor. And I think, you know, I don't think that it's entirely clear. But the fact that it's not entirely clear, I would also note, too, that Judge Coate cited and included as part of the record the PSR, which was fairly clear on the timing of any parole revocation proceedings. So it's hard to understand why she would believe he was on parole revocation status, whatever that means, when he was arrested in July. But even if that's the case, it was never returned to throughout the entire proceeding. It was not one of the reasons... The defense counsel didn't find it necessary to correct this, let it go by, which, you know, it's not just, it's not, that's not to fault defense counsel or to say that something is forfeited necessarily. It's just that when things are happening, sometimes it's obvious that they don't mean very much or that they're not really problematic. So I would take the failure to object in that light that it sounds like a slip of the tongue. I think that's correct, Your Honor. I would also point out that to the extent that there's a suggestion that somehow that stray comment itself could affect the defendant's rights, the whole point of parole revocation status is that the defendant committed a crime while on parole and that he was, and that there could be consequences that resulted from that. And there's now going to be, there's now and it's why it seems to me like a slip of the tongue because the word revocation comes up later on that page in reference to consecutive or not sentencing that there's going to be other consequences from this. So I just have a hard time understanding that, you know, what this means, because if you thought someone had actually had his parole revoked based on this prior arrest, you wouldn't be out on the street committing the offense that brings him to the federal court. That's correct, Your Honor. I think the PSR indicates that at the time of the sentencing, there were parole revocation proceedings pending, likely because I think the defendant was in federal custody at that point, so they couldn't proceed. But regardless, the core of, I think, the concern with parole revocation or mentioning that at all could only be that the defendant committed this crime on parole and may have his parole revoked as a result, and those facts are undisputed. Lastly, Your Honor, I'd just like to touch base quickly on the JUA decision. Defense, my friend has cited that several times. I don't think that the reading of that is correct. I do not think that JUA stands for the proposition that this court is overruling its prior precedents that the fact of an arrest may be considered by the court. JUA was, in fact, about potential assumptions that the district court had made about underlying conduct, specifically whether there was one instance or multiple instances of sexually abusing a minor, and that the court found that there wasn't enough independent substantiation of that in that case. It wasn't about whether or not the court considered the fact of an arrest. It was about whether it could actually assume without additional facts that there was a preponderance of the evidence supporting the existence of multiple sexual abuse incidents, and that's simply not the case here. Friends to the written statement of reasons, the government publicly requested that from the court, provided it as soon as it was requested by defense counsel, and it's the experience of others in my office that those typically are not filed on the docket. They're, in fact, marked not for public disclosure and are not noted on the docket. Mr. Schaffer, I was going to ask you about that because as a former district judge, I was a little confused. I thought the procedure was even though it's not publicly on the docket that the parties still get a copy of that. Is that incorrect? You don't separately get a copy of that even though it's not public? I think that they may, your honor. It's definitely provided to the probation department and to the sentencing commission. I do think it's available to the parties. It clearly was here. The government initially requested it from the court. The court just requested that the government make a formal request for it, and it was immediately provided. So I don't think that there's much of a problem with the parties having access to it. I would also note that this court previously noted in its Espinoza decision, which we cite in our brief in footnote five, this practice with respect to the statement of reasons in the eastern district of New York, and it seems to be a similar practice, but based on my experience and the experience of others in our office, it is not something that's publicly filed. All right. All right. Thank you, Mr. Schaffer. Ms. Slay, you have two minutes for rebuttal. Yes. Thank you. Just briefly on the statement of reasons, I'm not positive of what the consistent pattern on that is. I know in previous cases we've obtained it, but I can't say that it is not the case that sometimes parties have to request it. So that's why I have not raised that particular issue. Just a couple of points. First, with regard to the GWA decision, it very much does make clear that a prior arrest cannot be considered when there's no substantiation of the conduct. And so the idea that, yes, courts can consider a prior arrest if there are admissions by the party or if there's some facts in the record about that prior arrest, it can be considered as background. Here, there are no facts in this record about this prior arrest other than Mr. Baptiste's statement that this was not a lawful arrest and he was caught up in this suite. And so, yes, arrests can be considered when we have information about them. We have no information about this here, and there's no decision where, in that context, a prior arrest has been held to be proper. And I guess the other thing I would highlight about GWA is, in that case, they looked at the entire record. And the fact was, the judge, at some points, made comments suggesting he was improperly considering some of the priors that were the other offenses that were alleged. But then there were times where the judge said, no, I'm only considering the one that you pleaded guilty to. And I think the court looked at the whole record and said, it's ambiguous. We can't be certain that this wasn't improperly relied on. I think we have the same thing here. Yes, certainly the judge does say that the decision is being based on the gun, but there's never a point at which the court disavows the earlier statements about what the significance of that arrest was. And again, yes, the court is making it very clear that she's not finding that he was dealing drugs. But to say, and this part is explicit, that that prior interaction with law enforcement, that wrongful interaction for which he did nothing to warrant that, that that should have taught him a lesson. And he's not being properly deterred from this behavior when there is no evidence of wrongful behavior, given that in the record, and given the uncertainty about the reliance on that, particularly in the context of a case where she's going above and beyond the guidelines. And as my adversary noted, in a very short sentencing transcript, there is not detailed or lengthy explanation about this upward variance that combined with these improper factors that appear to be relied on, do make it problematic and do warrant a remand in this case. Thank you, Ms. Lee. Thank you, Mr. Shaffer. We reserve the decision. Have a good day. That completes the argument calendar for today. We'll take the last case, United States versus Frank on submission. And we will also take the motions calendar on submission. With thanks to Ms. Rodriguez and to the rest of our staff who helped us today, I would ask that she adjourn court. Court stands adjourned.